Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now open. The Honorable Christopher N. Kennedy presides. Good afternoon. Please be seated. The final case on the docket today is 2-24-0667. Margaret Thompson, individual name, and as Administrator of the State of Washington, D.C. Thank you. I believe the Centegra Management Services, F.L. Benjamin Cunningham. Arguing on behalf of Mr. Cunningham, Mr. Jacob D. Goldstein. I'm doing what we have to do. I believe Mr. Thomas J. Hoffman. Alright, Counselor Mr. Goldstein, you may proceed when ready. Please feel free to address the microphone. May it please the Court. Jake Goldstein on behalf of the Defendant Appellant, Centegra Management Services. We ask the Court to reverse the Circuit Court's order denying our request for a set off to vacate the amended judgment order entered on the jury's verdict and remand for entry of a new amended judgment reflecting our requested set off and for entry of an order demonstrating that the judgment has been satisfied. The central issue before the Court today really is whether Section 2C of the Illinois Joint Tort Fees or Contribution Act applies in this case. In the briefing before the Court, the Circuit Court and this Court, plaintiff raises a series of issues as to why the 2C does not apply, including that Centegra waived its right to a set off by failing to file a contribution action, by the fact that no party sought a good faith finding following the settlement, and that the Shaw Defendant's payment to plaintiffs in exchange for a full release of liability was in fact nothing more than a collateral source payment that is not subject to a set off. We have thoroughly addressed all of these arguments in our briefing before this Court, and unless the Court has questions, we would much rather prefer to spend our limited time before you addressing what we see as the crux of plaintiff's arguments before this Court, which is that Section 2C of the Act does not apply, because the jury ultimately returned a verdict in favor of the Shaw Defendant, and thus the Shaw Defendant cannot be considered liable in tort under the Act. This interpretation of the Act is contrary both to the spirit and legislative intent underlying the enactment of Section 2C, but it is also contrary to Illinois law, including precedent from this Court. As our Supreme Court stated in Pasquale v. Speed Products Engineering, the legislative intent underlying Section 2C was to ensure that a plaintiff is entitled to only a single recovery for any injury. Denying Centegra the set off in this case, and allowing the plaintiff to recover in addition to the $2.9 million jury verdict, would thwart that legislative intent, and it would allow plaintiff to obtain damages in excess of the jury's determination of what is a reasonable compensatory damages in this case. In other words, it would allow for that prohibited double recovery. While it's true the statute does say and does contain that language liable in tort, requiring a determination of liability would create absurd results, especially when you look at it in the context of the language of the statute that it is to apply to covenants not to sue and not to enforce the judgment. That language necessarily contemplates that settlements before a verdict is reached, and under such agreements, both parties have agreed that they are going to proceed according to the terms of the settlement and such that it supplants the verdict. It's true here. That's exactly what is happening. We do not have the Shaw defendants turning around to the plaintiffs and saying, we want to enforce this judgment. Give us our money back. What are we supposed to take away from the legislature's use of subject to liability in tort versus liable in tort between A and C? Sure. In A, the appellate court has specifically said that that is based on contingent liability for contribution actions. Under C, the appellate court has not specifically addressed that, but there's no reason to assume a different result, and the reason is that, again, it would result in, it would create absurd results in that we would have to go, we would look at the prior case law where courts across the state have all approved setoffs where there was no determination of liability. And if you look at Pinsky, our newly appointed Chief Justice, P. Scott DeVille, where he said when he was still on the appellate court that in circumstances like this where you have a high-low settlement agreement and the condition of either the high or the low is met, that condition or that settlement supplants the verdict. And it becomes where the settling defendant is then obligated to pay the amount that was agreed upon, whether it's the high or the low, instead of what the verdict said. So is the high-low agreement, is it a release? Is it a covenant not to sue, a covenant not to enforce a judgment? How should we be considering the nature of a high-low agreement? Thank you for the question, Justice Kennedy. The way this court should be considered is the way that high-low agreements have been considered across all of our appellate courts so far, in that these are settlement agreements. These are releases of liability, just as it is in this case. It was intended to release the shaw defendants of all liability, of all tort liability, for the same exact injury for which Santegra was also being held liable. So when you look at the principles of statutory construction and the well-recognized legislative intent underlying Section 2C, it necessarily does not require a settling party to be found liable before a non-settling party can claim a set-off for that amount of the settlement. This court reached that same conclusion in Nguyen v. Diwali. In that case, the court recognized that courts across this state also recognized set-offs and approved set-offs in cases where there was no determination of liability against the settling defendant. And in that case, they approved the set-off even though it reduced the judgment against the defendant who was ultimately found liable to zero. In that case, it also addressed the issue that plaintiff raised in their brief, that this would create a windfall for the defendants. The problem with that theory is that the theory behind negligence actions is not punishment of the defendant, but it is to compensate the plaintiff for their injuries. And a plaintiff who has been fully compensated for their injuries as determined by a jury cannot, has no basis to complain. And while there was a post-settlement determination of liability here, that determination is of no legal significance for the application of Section 2C because it's the party's pre-verdict settlement at which time the shaw defendant's liability remained intact and not the jury's verdict that controls here. And that is the only interpretation that is consistent with the underlying purpose of Section 2C, which is to ensure that single recovery and prevent double recovery. And ultimately, I know plaintiff has also raised the arguments that, well, this case is different than cases where there were settlements prior to trial, and so there was no determination whatsoever as to the settling party's liability. But there's no meaningful difference between the two. And the shaw's defendants are still agreeing to pay a set amount of money in exchange for a release of full liability for the same damages, the same injury for which they're seeking against Sentegra. And plaintiff is accepting that amount of money in exchange for that and giving the shaw defendants that release. Just as the settling parties in these other cases would pursue into any other pre-suit, pre-trial, pre-verdict settlement in those cases where there was not followed by a finding of liability against the settling defendant or a non-liability against the settling defendant. The only consequence of a post-judgment determination of liability in this case and in any high-low case is that it sets the amount of damages, compensatory damages that that defendant is agreeing to pay the plaintiff in exchange for that release of full liability. Your Honors, unless the court has any... Counsel, the plaintiffs here have cited the Georgia case, Broda. Why is that not persuasive authority? The Georgia case, including that's Broda, then you have Fiddle Halls, and you have In Re Miriamsburg. Those are cases out of Georgia and Ohio, I believe. They're all irrelevant and should be rejected for three reasons. All of these cases are contrary to the long line of cases cited in Nguyen by this court, all holding that a set-off is not predicated upon a finding or determination of liability against the settling defendant. Those cases would also, if this court were to adopt the position taken by that admittedly and self-described minority rule, it would abrogate Illinois' adoption of the single recovery rule. That minority view also conflicts with the Restorement of Tort Second, Section 885, Subpart 3, Subpart A, E, and F. And in Restatement Second of Judgment, Section 50, and a majority of other states which, like Illinois, modeled their contribution statutes after the Uniform Tort Fees or Contribution Act and who all subscribe to the single recovery principle and prohibition against over-recovery. Has any court explicitly adopted that section of the Restatement? Your Honor, I do not know the answer to that question. Thank you. Unless the court has any other questions, I'd like to reserve the remaining time. Counsel, yeah, I do want to go back on. So good faith finding. Final court obviously never made one. Doesn't 2C require it, or are you asking us to presume it? One, the Contribution Act requires it in the sense that the settling defendant would need that in order to extinguish any ongoing exposure for potential contribution action by the non-settling defendant. But we are asking also that you presume it here because no party was taking the position that it was not, this settlement was not made in good faith. Thank you, counsel. We will have time and move on. Ms. Popovich, you may proceed when ready. And again, feel free to adjust the microphone. Thank you. Good afternoon, everyone. Justice Jorgensen, Justice Kennedy, and Justice Mullen, my name is Tom Popovich, and it is my honor and high privilege to represent Margaret Thompson and her two daughters, Tori and Casey, in this case, both at the trial level and, of course, here today, along with Mr. Kornack as well. Justice Mullen, if I might segue a little bit from my planned initial statement to answer your question that you posed to Mr. Goldstein, no, those two restatement sections relied upon by Sintegra in the brief have not been adopted here in Illinois by any court, and most importantly by the Illinois Supreme Court. We point that out in our brief, I think. Of all the cases cited by Sintegra in its brief and all of the Illinois cases discussed by Sintegra here today, not a single one of them is dispositive because none of those cases involved the defendant who paid money to the plaintiff, went to verdict, and was specifically found not liable in tort to the plaintiff. And it is that language, quote, liable in tort, that is one of the several requirements that must be met under Section 2C. When do you decide whether you're liable in tort? Is it at the time of the agreement or not? So the case law indicates that subject to liability in tort, which I think Justice Kennedy, you referenced a little bit, that's in 2A. 2A talks about the right of contribution. When is that right? When do you have the right to file a contribution claim? That's what 2A says. And the language there says anybody who's subject to liability in tort. And then Doyle v. Rhodes, the Illinois Supreme Court, looked at that language, right? Because in Doyle v. Rhodes, remember what happened is that plaintiff sues defendant, defendant sues the employer. And the employer said, hey, you know, no, you can't sue us because we have the statutory immunity of an employer. And the Illinois Supreme Court said, oh, no, if you look at 2A, it says if you are subject to liability in tort. And they said if you're still subject to liability in tort, even though you have that statutory immunity, because you might not assert that defense for whatever reason. So they said you are subject to liability in tort, even though you have, you know, a clear winner on the defense, because you might not assert it. So that's what 2A says about subject to liability in tort. 2C, which is a set-off provision of the Contribution Act, uses completely different language. What it says is that you can only get a set-off from a party who is, quote, liable in tort, end quote. And as we cited in our briefs, you know, you guys know this better than me, when the legislature uses different language in different parts of the statute, there's a presumption that they meant something different by a different language. And that's what we have here. So that's why subject to liability in tort, 2A, totally different than liable in tort in 2C. I kind of forgot your question there, Justice Jorgenson. I don't know if I answered it or not. The point is, does it matter when the agreement is entered into? They were still subject to tort liability at that time, versus liable in tort. Right. So if I could try and answer that a little better than I answered it the first time. So they become liable or not liable in tort under 2C. We don't know that until when, until the jury returns the verdict. And it's at that moment, everyone knows whether they were liable in tort or not liable in tort. So that's the operative timeframe of whether or not they get a setup under 2C. At the time, because remember, the courts have told us that when we first enter into a high-low agreement, it's a conditional agreement. And it's not fully enforceable until that verdict comes back. That's what Pinsky says. So at the time that the verdict does come back, there's a finding, boom, Sintegra's not liable in tort. And so under 2C, You mean? Would that say Sintegra? Yes, sorry. The Shah defendants become not liable in tort at that time. And so under the clear language of 2C, they don't get a set-off. So how would that affect, as a practical matter, very few cases are ever going to settle after a verdict? You're saying this should be limited only to those conditional high-low type of settlements? Yes, yes, 100%. And they try and, to their credit, Sintegra tries to conflate, well, if you rule in favor of the plaintiff in this case, that'll ruin all of these pre-verdict settlements that are entered into a lot, right? You know, pre-trial or during trial. Because that'll eliminate the whole set-off. No, it doesn't. Because this is a very unique set of circumstances when you have a high-low and the jury determines the liability of that paying party. So this case is limited to those situations where the jury determines the liability of that paying party. So it's not going to affect the 95% of cases where they enter into the standard release of a defendant for a sum certain. Here, it was a conditional settlement. It was not for a sum certain. There are all kinds of things that could have happened pursuant to the high-low. And the other thing is, you know, we paid a very high price for that high-low agreement. We took a huge risk and entered into that high-low. Remember, the high-low agreement was 1.95. I wasn't sure. 1.95 for the low, and I think it was 1.9 for the high. Maybe 1.95. But in my closing argument, you know, I asked the jury to award $10 million. And quite frankly, I was a little shocked that they only awarded 2.9. But the point is, so if the jury had come back in favor of Shah and against Integra for $10 million, my client would have been out over $8 million because of the risk she took. And the same thing, and I put this in my brief, I know, you know, about the waiver of the appeal issue. We also waived our appeal rights, and that's a very significant risk. That's why you guys are in business, you know, because there's all kinds of appeals from the trial court and after trials. So we waived that. Does that matter here? Is that something else that's on the table that isn't money? Yes. In appeal you're generally. Yes, and here's why. Here's how I relate to this. So one of our arguments is, listen, you know, this is not a double recovery for the same injury. No. The recovery that we're getting, that we got from Shah, was not because of the death of Mike, Mr. Thompson. It was because we entered into a risk-sharing agreement with Shah, just like they wanted to cut their risk. They were like, hey, we're a little nervous here. You know, Kornak did a good job at trial. Maybe we're going to get whacked. So he said, listen, let's cap it. And we said, you guys did a good job too. Maybe we'll get nothing from you guys. So let's enter into this risk-sharing agreement. In essence, it was a purchase of insurance by both of us, is what that was. And this is important. So I'm jumping all over. My notes are really all screwed up now. But let me jump to Arthur versus Couture. And before you do that, counsel, I want to just follow up on the double recovery. If the jury in its verdict can be seen to have set damages at 2.9, how can you ever recover more than that? Glad you asked that question, Justice. And that brings us to Arthur versus Couture. So Arthur versus Couture was an LSB court in 2005, right? And that involved the question of collateral source rule and some evidentiary issues with respect to it. And so the Illinois Supreme Court really dug into it. And they talked about this concept of, well, you know, the collateral source rule really ends up the plaintiff gets double compensation because they didn't pay the full value of those medical bills, right? But they still get compensated for them in the jury verdict form, okay? So are there any cases in which a collateral source is a co-defendant as opposed to, you know, a third-party, you know, insurance? I understand. Not that I could find, but here's the language from both the Illinois Supreme Court and they approve it in sight, so it has been adopted, Section 920A of the Restatement of Torts. And here's what they say about this idea. The injured party's net loss may have been reduced correspondingly because of the collateral source rule. And to the extent that the defendant is required to pay the total amount, there may be a double compensation for a part of the plaintiff's injury. But here's the key part. But it is the position of the law that a benefit that is directed towards the injured party should not be shifted so it's become a windfall for the tort fees. And that's what we have here. We entered into this insurance risk-sharing agreement with the Shaw defendants. We could have lost $8 million in that deal. Fortunately, we won. And now, September wants to run in and they want to gain the benefit of our risk for that. So here's what the Illinois Supreme Court also said in our tour, Arthur, about this concept of double recovery. It's very important because we're going to see that there's a change in this. They quote, quote, The justification for this rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons, end quote. And then what happened three years later, the Illinois Supreme Court again took on a case concerning collateral source rule. And that case was Wills v. Foster. And in that case, they took it a little farther, this idea of double compensation. In Wills, the issue was, hey, does the collateral source rule apply to free benefits that have been bestowed on the plaintiff? So in Wills, the plaintiff had had medical bills paid by Medicaid. And so the defense had said, well, wait a minute, that wasn't really something that they had put out on their own. It's something they received for free. And so what they said was, hey, under Peterson v. Lou Botrott, that was the old Shriner's Hospital case. And they said, under Lou Peterson, no. You didn't put anything out, plaintiff. You didn't buy health insurance beforehand. You didn't take a risk. So you get nothing. That's what the defense said in Wills. And Supreme Court said this. They overruled Peterson. Specifically overruled. There's even a bright headline in the case. Peterson's overruled. And here's what they said. Peterson's focused solely on the compensatory nature of tort damages, relied on Section 903 of the restatement, and explicitly rejected the reasoning that any windfall should be awarded to the plaintiff rather than defendant. So that was the old thinking under Peterson. They said, oh, no, it's a double recovery. It should go to the defendant. Then it says this. Arthur focused on Section 928 of the restatement, which I mentioned to you, specifically cited the language from comment B, that even if the plaintiff receives double compensation, quote, it is the position of the law that a benefit that is directed to the injured party should not be shifted so it's become a windfall for the tort measure, end quote. And then they say we specifically overruled Peterson. So we see a shift in the L.A. Supreme Court's thinking in Arthur and Wills. And this is important. Thank you. Defense lies solely on Pasquale. That's their big case because they say, well, Pasquale says, you know, that the intent of the 2C is to prevent a double recovery. Pasquale was in 1995, okay, before we see the shift in the L.A. Supreme Court saying, hey, the Lou Baccarat idea of not, of absolutely never allowing a plaintiff to have a double recovery, that's out the door now, okay, because we're looking more so at that the defendant should not receive a windfall. Those are the words used by the Wills Court. So that's now the operative philosophy, I think, that the L.A. Supreme Court is operating under and that applies to this case. It's not so much whether the plaintiff receives a double recovery, it's whether or not the defendant is getting a windfall from something the plaintiff did. Any questions? Isn't that exactly what the Georgia case talked about? It's right on point. And even, there's the other case, excuse me, I'm getting old, I forget the other out-of-state case that we cited in the brief, I was looking at it last night before I let the dogs out, and it's even more on point, and I wish I could remember it, it's in my brief, and I apologize for it, but it's even more on point and goes into more detail about that, about this concept of double recovery and, you know, a windfall from the defendant. And basically what it says is, hey, listen, if there's a choice, we're going to go with the plaintiff. Because, remember, Centegra was found liable. They're the ones that caused this whole situation. So if we have to choose between two parties, one getting, quote, double compensation, which I don't agree with that terminology, or one party getting the windfall from the defendant, we're going with the plaintiff. He should get it. He took the risk. Do you have any other questions? No. I have one question before you conclude, counsel. Just mechanics here, good faith finding. Yeah. On that topic, would plaintiff entering into a high-low with one defendant and going to trial against the other. Yes. Who's going to ask for the good faith finding? Well. And is it necessary? It kind of gets at something earlier. That assumes that there's a contribution claim filed. Because under Lau versus Lefite, if you don't file a contribution claim in the same action, you're out the door. But let's presume that in this case, Centegra had filed a contribution claim against the shot defendants. So if they had done so, and then after the verdict came back, they would have said, judge, so that we can at least try to get our set off. We want to have a good faith, a hearing for good faith finding, so we can get our set off. Anything else? No. All right. Thank you very much, counsel. All right, Mr. Goldstein. Your rebuttal? I guess give counsel time to clear the part in there. Sorry. I prefer the yard sale style of set up. That's all right. All right. Thank you very much, counsel. Mr. Goldstein. Thank you, Your Honor. If it's all right with the court, I'd like to just start off where plaintiff left off on the good faith finding issue. On your question, Justice Kennedy, the good faith finding is only important for the settling defendant in order to extinguish the either existing contribution action or the potential exposure for a future contribution action. In this case, the statute of limitations had already lapsed on a contribution action that could have been brought by CENTC or management services, and therefore there was no need for good faith finding here, and is presumably why the shod defendants did not try to seek one in order to protect them against one in the future. Nor is a good faith finding, the need for it, only required if there is a pending contribution action, as plaintiff suggests. Again, it is whether there is a pending one, but if there isn't, it is also to extinguish the future potential exposure to one. A large part of plaintiff's argument addressed the collateral source rule. The collateral source rule, it just simply does not apply here. It is a rule that applies to insurance payments or medical benefits received by plaintiffs that are negotiated with a third party prior to any injury typically, and certainly prior to any litigation, and the third party has no involvement with the lawsuit whatsoever. The settling defendant's payment pursuant to a settlement agreement is not collateral to the litigation, but is rather a payment made to them, to the plaintiff, to resolve plaintiff's litigation, and thus it cannot be collateral to the litigation and fall under that rule. If this were true, if the collateral source rule or plaintiff's interpretation of the rule were true, the same could be said of every single settlement agreement, pre-trial settlement agreement, pre-suit settlement agreement, pre-judgment settlement agreement, resulting in the collateral source rule completely swallowing Section 2C and never allowing a set-off in any case. What about the argument plaintiffs have made concerning the risk and limiting this to high-low agreements just because of their nature? Thank you for raising that, Justice Kennedy, because this was something I intended to address as well. The problem of limiting this to high-low agreements presents several problems, I should say. First, it would create a significant prejudice on the non-settling defendant because the high-low agreement typically occurs while the jury is, like in this case, while the jury is deliberating. That defendant would have had no opportunity to present a case of trying to now prove that settling party's liability in order to ensure they get the set-off if such a rule were to be adopted. But it would also create the unintended consequence of now encouraging plaintiffs to sue as many defendants as possible, no matter how dubious their liability may be for the plaintiff's injuries. In the hopes that prior to trial they are into a settlement agreement with them. It's true, defendants settle with plaintiffs for all types of reasons, whether it is to avoid bad publicity, the cost of litigation. There are numerous decisions other than a belief that they may actually be liable for the injury. And so you would create this situation by adopting a rule like this. And these are not my own interpretations of the consequences of adopting such a rule. This is what three justices on the Ohio State, Ohio Supreme Court held in fiddle holes as to the potential consequences of adopting this rule and why they were dissenting against the majority in that case who were adopting the minority rule that plaintiff is advocating this court adopt now. In addition to the fact that it would completely abrogate the single recovery rule as well. Part of the other problem with this collateral source rule argument and really with plaintiff's entire argument altogether is that it requires this court to ignore the inescapable fact that the only consideration plaintiff provided in exchange for the payment of the $950,000 from Santegra was a full release of liability for the same injury that Santegra was being held liable for. When you have the only consideration that plaintiff was offering in exchange for the payment of the $950,000 from the Shaw defendants was a full release of liability, of tort liability. May I finish my answer, Your Honor? Was a full release of the tort liability against the Shaw defendants. That's the only consideration that they were given for it. What about the right to appeal? The right to appeal, sure, I guess I should say I forgot that, Your Honor. That is another piece of consideration. But the inescapable fact is that part of the consideration for their agreement to enter into this high-low was to extinguish the Shaw defendants' tort liability for the same injury for which the Santegra was ultimately held liable for. And under 2C, the set-off provision is required in order to protect against the double recovery for any damages resulting from the same injury. And that's what we have here. Thank you, Your Honor. May I briefly conclude? We ask that the Court reverse the Circuit Court's denial of our motion for set-off, vacate the amended judgment order, and remand this case for entry of a new amended judgment order and for entry of an order establishing that the judgment has been satisfied. Thank you. All right. Thank you, Counsel. I want to thank the attorneys for a very interesting argument. We will take the matter under consideration and issue a ruling in due course. And we will adjourn for the day.